UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **JAMES MURPHY**, <br><br> Plaintiff, <br><br> v. <br><br> **DANIEL DRISCOLL**,[1] <br> **Secretary of the Army**, <br><br> Defendant. | Civil Action No. 23-cv-3481 |

**MEMORANDUM OPINION**

Plaintiff James Murphy retired from the Army as a Sergeant First Class after more than thirty years of service. In 2023, he sued the Army, alleging that its Board for the Correction of Military Records violated the Administrative Procedure Act in 2022 by denying him medical disability retirement.

Both parties cross-moved for summary judgment. Def.'s Mot. for Summ. J. at 1–21, ECF No. 14-1 ("Def.'s Mot."); Pl.'s Opp'n & Mot. for Summ. J. at 1–32 ("Pl.'s Opp'n"), ECF No. 17-1. The Army argues, in part, that Plaintiff's Complaint is untimely because he did not seek reconsideration of the Board's 2015 decision until more than six years after the Board denied his relief. Def.'s Mot. at 11–15. Because the court agrees, it will GRANT the Army's motion and DENY Plaintiff's motion.

---

[1] The court updated the caption in this Memorandum Opinion to reflect the current Secretary of the Army. Fed. R. Civ. Pro. 25(d).

I. **BACKGROUND**

A. **Legal Background**

The Secretary of the Army makes disability determinations through its "Physical Disability Evaluation System." *Sissel v. Wormuth*, 77 F.4th 941, 943 (D.C. Cir. 2023); *see also* 10 U.S.C. §§ 1201-22, 1552–59. The "first step" is for a commander to refer a soldier to a treatment facility if they believe the soldier "is unable to perform" their duties. *Sissel*, 77 F.4th at 943 (internal quotation marks and citation omitted). "After that evaluation," if the soldier "appears" "not medically qualified to perform duty," the soldier undergoes review before the Medical Evaluation Board ("MEB") to determine whether they can remain on duty. *Id.* If they cannot, they are referred to the Physical Evaluation Board ("PEB"). *Id.* Army Regulations provide, however, that referral to the MEB is "not required" if the medical "condition is long standing and has not prevented the soldier from reaching retirement eligibility." Def.'s Regul. App. at 44 (quoting Army Reg. 40-501 ¶3-3(d)), ECF No. 14-3 ("Army Reg"). "[O]nly if the condition has precluded or prevented successful performance of duty" should an evaluating physician refer a soldier to the MEB. *Id.*

B. **Factual Background**

Plaintiff served in the Army from August 1969 to February 1972. J.A. at 14, 68, ECF No. 22 ("J.A."). He then enlisted in the Army Reserve, where he served as a construction engineer specialist, eventually becoming Sergeant First Class. *Id.* at 343. On February 2, 2001, the Army Reserve Command notified Plaintiff that he was eligible for retirement because he had accrued twenty years of service. *Id.* at 15.

The Army ordered Plaintiff back to active duty for two short stints between 2001 and 2002 and again between 2008 and 2009. *Id.* at 66–67. During the first period, he developed several medical issues, including a knee injury and pneumonia. *Id.* at 15, 50, 79. He eventually sought

disability from the Department of Veterans Affairs and relied on opioids to manage the pain. *Id.* at 20, 51–52, 87.

The Army assigned Plaintiff to be an instructor and writer in Fort Dix, New Jersey for his second active-duty stretch. *Id.* at 344. But on June 18, 2009, Plaintiff's senior commander requested his early release from active duty, because Plaintiff's physical profiles for "physical capacity or stamina" and "upper extremities" made him ineligible under U.S. Army Training and Doctrine Command rules to instruct or manage any courses. *Id.* at 16.

The Army uses a physical profile system to measure fitness, with scores across six categories. Servicemen are scored between 1 and 4 for each category—one being the highest. Army Reg. at 60. In July 2007, a medical provider scored Plaintiff a "3" in two categories: physical capacity or stamina, and upper extremities. J.A. at 16. As a result, on July 8, 2009, rather than referring Plaintiff to the MEB, the Army deemed Plaintiff "unfit for duty due to asthma, cervicalgia, carpal tunnel syndrome, and shoulder impingement." *Id.* at 16. He was also diagnosed with hyperlipidemia and hypertension and sent to the cardiology department for an evaluation. *Id.*

Although the Army released Plaintiff back to duty with limitations, an Army Unit Commander indicated that he was not qualified to continue his military occupational specialty "without" a MEB determination. *Id.* at 16, 103. At no time, however, did the Army refer Plaintiff to the MEB. Indeed, its final evaluation of Plaintiff found that his medical conditions did not "prevent him from being an effective course manager"—Plaintiff's last active-duty assignment. *Id.* at 22, 870.

On August 16, 2009, Plaintiff was honorably discharged from active duty. *Id.* at 66. He joined the Retired Reserve, effective April 13, 2010, and the Retired List, one day later, on his sixtieth birthday. *Id.* at 877–78.

### C. Procedural Background

In 2011, Plaintiff first petitioned the Army Board for the Correction of Military Records ("Correction Board"). *Id.* at 364. He requested medical disability retirement, instead of an Army Reserve retirement. *Id.* at 373–75.

On October 27, 2011, the Correction Board denied Plaintiff's application, noting the medical records Plaintiff provided did not allow it to determine which of his medical conditions existed before his service, accrued while on active duty, or were aggravated by active service. *Id.* The Board also concluded that "[n]owhere in any of his" noncommissioned officer "evaluation reports does it show he could not perform the duties required of his grade, position, or" military occupational specialty, "and the primary consideration for referral to the" physical disability evaluation system "is to be medically unfit to perform one's duties." *Id.* at 373; *see also id*. ("His continued successful service in his [military occupational specialty] suggests and supports a presumption of fitness.").

Plaintiff requested reconsideration, but the Correction Board denied it on July 11, 2012, because Plaintiff had not submitted new evidence. *Id.* at 10, 355, 380–85.

Plaintiff's 2014 petition requested slightly different, but related, relief. He asked to amend his final discharge certificate to reflect his medical disability, not his failure to complete a mission. *Id.* at 570. The Correction Board denied that request on September 30, 2015, concluding that there was no error in the narrative reason for Plaintiff's separation. *Id.* at 10, 17, 562–69.

Plaintiff's 2021 petition sought the same relief the Correction Board had previously considered and denied in 2011 and 2015 and was processed as a request for reconsideration. *Id.* at 5, 7, 43–45. The Board obtained a review of the Army's records by a Medical Advisor, who determined that Plaintiff did not have a valid permanent physical score of a 3 to warrant his transfer to the MEB because previous scores either contained insufficient medical documentation or

Plaintiff was still able to perform his duties. *Id.* at 22, 29–32. On August 31, 2022, the Board therefore denied Plaintiff's petition and adopted the Medical Advisor's conclusion that Plaintiff could have completed his duties through his last mobilization despite his medical conditions. *Id.* at 6, 22, 870. It informed Plaintiff of its decision by letter on March 29, 2023.[2] *Id.* at 5.

Plaintiff sued the Army in this court on November 20, 2023. Compl., ECF No. 1 ("Compl."). He claims that the Correction Board violated the Administrative Procedure Act ("APA") because: (i) Plaintiff's physical profile scores in 2002, 2007, and 2009 required his referral into the disability evaluation system; *id.* ¶ 97; (ii) Plaintiff's pain medication was the only reason he could function in his duties as an instructor; *id.* ¶¶ 98; (iii) it ignored binding Army regulation; *id.* ¶¶ 105–17; and (iv) it failed to correct a clear injustice because Plaintiff was only forced to retire because of his age, instead of his multiple injuries and intense pain. *Id.* ¶¶ 118–35.

II.     **LEGAL STANDARD**

Summary judgment is appropriate when the record shows that there is no genuine disputed material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In determining whether a genuine issue of material fact exists, the court must view all facts, and reasonable inferences drawn therefrom, in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

---

[2] Because both parties refer to the Correction Board's decision by the 2023 date, the court will adopt that date as the date of issuance. Def.'s Mot at 8 (referring to the Correction Board's response to Plaintiff's 2021 reconsideration petition as the "2023 Decision"); Pl.'s Opp'n at 13 (same).

### III.   ANALYSIS

The Army argues that Plaintiff's Complaint is barred by the APA's six-year statute of limitations because his 2015 reconsideration request of the Correction Board's decision was untimely. Def.'s Mot. at 11–15.

With certain exceptions, "every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues." 28 U.S.C. § 2401(a). Section 2401(a) applies when a service member brings a direct challenge to his discharge. *Kendall v. Army Bd. for Corr. of Military Recs.*, 996 F.2d 362, 365 (D.C. Cir. 1993). The limitations period applies to "all civil actions whether legal, equitable, or mixed," and "likewise applies to claims seeking to correct or upgrade the discharge of former service members." *Id.* Therefore, "a challenge to military board of corrections decision must be filed within six years of an adverse review board decision." *Jackson v. Spencer*, 313 F. Supp. 3d 302, 309 (D.D.C. 2018). "[I]f an application [for reconsideration] is not filed within six years of the adverse review board decision, the period for filing suit [in federal court] does not run from the date of the decision on reconsideration, instead it runs from the date of the adverse review board decision." *Nihiser v. White*, 211 F. Supp. 2d 125, 129 (D.D.C. 2002).

Here, the Correction Board issued its initial adverse decision on October 27, 2011, and the second on September 30, 2015. J.A. at 10, 17, 373–75, 562–69. To the extent that Plaintiff challenges the 2011 decision, he timely sought reconsideration of it in 2012. *Id.* at 10, 355, 380–85. But he did not file suit in this court until 2023—six years past the 2017 deadline. ECF No. 1. To timely challenge the Correction Board's 2015 decision, Plaintiff would have had to request reconsideration by October 30, 2021. He did so on December 14, 2021, nearly two months past the APA's six-year deadline. J.A. at 43–45.

Plaintiff does not argue that Section 2401(a)'s time bar should be tolled. Instead, he claims that the Correction Board's 2023 decision is a new, final agency action that "reopened" his decision. Pl.'s Opp'n at 15. The court disagrees.

"In circumstances where an agency has reopened a previously considered issue anew upon application for reconsideration, the reopening doctrine allows an otherwise stale challenge to proceed." *Peavey v. United States*, 128 F. Supp. 3d 85, 99 (D.D.C. 2015), *aff'd*, No. 15-5290, 2016 WL 4098768 (D.C. Cir. July 12, 2016) (internal quotation marks, alterations, and citations omitted). To determine whether an agency reopened a case, a court must evaluate whether the agency "in light of the entire context, under[took] a serious, substantive reconsideration" of the issue. *Chenault v. McHugh*, 968 F. Supp. 2d 268, 272 (D.D.C. 2013) (internal quotation marks, alterations, and citations omitted). An agency can reopen a case even when it "merely reaffirms its original decision." *Sendra Corp. v. Magaw*, 111 F.3d 162, 167 (D.C. Cir. 1997) (quoting *I.C.C. v. Brotherhood of Locomotive Engineers*, 482 U.S. 270, 278 (1987)). But merely discussing "the merits at length" does not mean the agency "reopened the proceedings." *Id.* (citation omitted). For example, in *Peavey*, 128 F. Supp. 3d at 99–101, another district court in this Circuit found that the Correction Board had reopened its previous decision because it did not style its decision as a reconsideration, it did not rely on past decisions, and it waived its own statute of limitations to consider the plaintiff's untimely request.

None of the factors that the *Peavy* court found relevant are present here, however. First, the Correction Board explicitly styled its 2023 decision as a "reconsideration," not as a new action or "reopening." J.A. at 7. In *Peavey*, however, in finding that the Board reopened a decision, the court noted that the Board did not explicitly state that it was a "reconsideration." 128 F. Supp. 3d at 100. Plaintiff made clear in his 2021 petition that he was seeking the same relief that the

Correction Board had denied in 2011 and 2015: (i) disability retirement, and (ii) to amend his final discharge certificate to reflect his disability.  J.A. at 49; *see also id.* at 373–35, 570; *see Peavey*, 128 F. Supp. 3d at 101 (finding that a signal of an agency reopening a case is when the plaintiff raises new claims).  Second, in its 2023 decision, the Correction Board "unambiguously referred" to its prior decisions in 2011 and 2015.  *See Chenault*, 968 F. Supp. 2d at 274–75 (finding that an agency's did not reopen a case in part because it "unambiguously referred" to its prior opinion).  In the facts section of the decision, the Correction Board noted that in 2011, it "denied" Plaintiff's petition, in part, because Plaintiff "still served as an effective course manager despite [his physical] profile[.]"  J.A. at 10.  It then explained that it denied Plaintiff's 2014 petition because he "was released from active duty due to his inability to maintain his certified instructor status, not because he was found unfit for duty."  *Id.*  The Correction Board also described how it informed Plaintiff of its 2011 and 2015 decisions.  *Id.* at 17–18.  Third, even though a Medical Advisor reviewed the Army's records as part of the Correction Board's 2023 decision as to whether Plaintiff should have been referred to the MEB, *id.* at 29–32, the Medical Advisor came to the same conclusion as the Correction Board in 2011: that Plaintiff's past physical profile did not interfere with his duty assignments.  *Compare id.* at 10 (the Correction Board concluded in 2011 that Plaintiff's profile did not prevent him from being an effective course manager), *with id.* at 22 (Medical Advisor concluded that Plaintiff physical profiles "did not prevent him from being an effective course manager" (internal quotation marks and citation omitted)).  Furthermore, the Board did not explicitly state that it relied on the Medical Advisor's new report in its one-paragraph discussion of its 2023 decision.  *Id.* at 22.  It merely concluded that "[t]he record also shows the applicant received a performance evaluation which indicated his profile did not prevent him from being an effective course manager."  *Id.*

Plaintiff counters that because the Correction Board did not "cite [its past] conclusions" in its discussion paragraph, it did not rely on them. Pl.'s Opp'n at 17. But the Correction Board came to the same conclusion in 2023 as it had in 2011: that Plaintiff's physical profile did not prevent his active-duty assignment. J.A. at 10, 22. Plaintiff rebuts that the Correction Board reviewed "voluminous" materials, Pl.'s Opp'n at 17, but that does not mean the Board did not rely on its past decisions. Just because an agency "discusses the [facts] at length when it denies a request for reconsideration does not necessarily mean the agency has reopened the proceedings." *Sendra Corp.*, 111 F.3d at 167. Nor is it significant that the Correction Board enlisted a Medical Advisor in reaching its 2023 decision. Pl.'s Opp'n at 17.

Finally, Plaintiff argues that his "failure to comply with the Correction Board's requirements for reconsideration, and the Correction Board's decision to review his application anyway, renders the Correction Board's 2023 decision a reopening of [his] case, not a reconsideration." Pl.'s Opp'n at 18. More specifically, Plaintiff argues that the Correction Board only gave him "one year" to request reconsideration of its 2015 decision with "new evidence" or "argument[s]." *Id.* Plaintiff did not request reconsideration until 2021, more than five years past when the Correction Board instructed him to do so. J.A. at 43–45. He argues that his noncompliance with the Correction Board's one-year reconsideration timeline should have barred his 2021 petition. Pl.'s Opp'n at 18. But because the Correction Board nonetheless considered his 2021 petition, waiving its own statute of limitations, the Board's 2023 decision, like the one in *Peavey*, 128 F. Supp. 3d at 101, indicates that it was a reopening.

The record before the court does not show that the Correction Board only gave Plaintiff one year to seek reconsideration of its 2015 decision, because the Joint Appendix provided only contains 383 pages, not page 559. ECF No. 22-3; Pl.'s Opp'n at 18. Nevertheless, assuming that

the Correction Board gave Plaintiff one year instead of six to seek reconsideration, that still does not indicate that it reopened his case. Unlike in *Peavey*, here the Correction Board did not explain that Plaintiff sought reconsideration late, or state that nonetheless it would "waive" such "if a review of the merits demonstrated that doing would be in the interest of justice." 128 F. Supp. 3d at 101. Indeed, the Correction Board did not mention Plaintiff's late 2021 petition at all, and therefore the court cannot infer that the timing of Plaintiff's 2021 petition affected the Correction Board's decision, as it did in *Peavey*. J.A. at 5–22. Accordingly, the court finds that the Correction Board did not reopen Plaintiff's "stale" case in its 2023 decision. *Peavey*, 128 F. Supp. 3d at 99.

## IV.   CONCLUSION

For these reasons, the court will GRANT Defendant's Motion for Summary Judgment and DENY Plaintiff's Cross-Motion for Summary Judgment. A corresponding order will follow.

Date: March 31, 2025

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge